Good morning, your honors, and William Pittman, on behalf of William Johnson, the appellant in this case, and Jeremy Friedman, co-counsel, is present as well. May it please the court, and also I'd like to reserve approximately five minutes for rebuttal. So, I think without saying, the threshold issue in this case is whether Mr. Johnson had a reasonable expectation of privacy in the parcel that was removed by law enforcement from the UPS stream of commerce and was ultimately driven to a location in Orange County from Los Angeles, subjected to a dog sniff at the location. These issues regarding reasonable expectation of privacy or legitimate expectation of privacy are extremely fact specific. There are no bright line rules that dictate what should happen in a particular situation. Judge O'Scanlan's concurrence in that case, whose name I've forgotten, but he put out a theory that if the person claiming a privacy interest is neither the sender nor the addressee, there should be a per se rule that there's no Fourth Amendment standing. Can you address that? Why shouldn't we adopt a bright line rule like that? Well, first of all, it's a, Judge O'Scanlan's, it's a concurrence, which is not binding and certainly does not have a well reasoned precedential value. None of the other judges on the panel joined in that decision and there is an abundance of case law on this issue and I think that both the Supreme Court in Rakes and several other cases that we've cited indicate that this is a subject that does not lend itself to a bright line rule. Well, but one of the reasons it might not lend itself to an absolute bright line rule is theoretically the name on the package could be an alias of the recipient, but that's not the case here. The name on the package was the actual possessor of the apartment, right? Yes, but I don't think that that's really the determining factor. Essentially, and the case is U.S. v. Lozano where the concurrence was discussed, but essentially in my view, Judge O'Scanlan is basing his rationale on California v. Greenwood and he believes that an object or the subject of the search is subject to a third party or other persons having access to it that ipso facto, essentially, that an individual would not have standing. And I think it's clear that this is not that situation and I think... That's what the district court found here, right? The district court's view was that Ms. Lopez would have access to that package, that the manager would have given the package to her, and that there wasn't any declaration from Ms. Lopez that she would not have access to it. So that was his basis for saying there wasn't a privacy interest. Well, I think looking at the facts in this particular case, it's clear that Ms. Lopez was never at the location when Mr. Johnson was at the location. The judge made those factual findings and adopted those findings based on... But there's no evidence in the record that when the package was supposed to arrive, Mr. Johnson actually was at the location, right? He got there the next day. Actually, in his declaration and as found by the court, he arrived on January 5th, the day that the package was supposed to arrive at the location. In the evening? It's unclear. The declaration doesn't specifically say, but he does say that he arrived on January 5th and that he was expecting a package. He further says that whenever he arrived at the location, that he would stay there alone, that Ms. Lopez was never there when he arrived. So I think he does clearly state that he was there on... I know he said he was there on January 5th and that he was expecting a package. Did he say he was expecting a package on January 5th or January 6th? Well, he doesn't specifically say in the declaration. I believe he does say that... If I may just have a moment. The government says he said he expected it to arrive on the 6th. Well, what he said was that he traveled to Los Angeles on January 5th, stayed overnight at the apartment, and then he says he was present on January 6th and was expecting... But if he was expecting a package on January 6th, how could he have an expectation of privacy in a package that came on January 5th before he was expecting it? So the way that he could have an expectation of privacy is that he regularly stayed overnight at the apartment. He was authorized to pick up any and all packages and mail addressed to Ms. Lopez. He always stayed at the apartment overnight when he traveled to Los Angeles. He had keys to the mailbox. He had keys to the apartment. He had a fob with access to the elevators in every part of the building. He indicated, and it's undisputed by the government, that Ms. Lopez was never present at the apartment when Mr. Johnson was there. Let me ask you this, counsel. If there were a package that were actually addressed to Ms. Lopez and was intended for Ms. Lopez, is it your argument that your client would have an expectation of privacy in that package as well? Are you asking just in... I'm sorry. I'm asking you. You said he has an expectation of privacy in any package that comes to the location when he's there. And I'm asking you, are you saying that if there were a package addressed to Ms. Lopez that was unequivocally for her, that he would have an expectation in that, of privacy in that package? I believe that he would, and I would base that on... First of all, it's undisputed, and the judge made factual findings, the district judge, that Ms. Lopez specifically notified the building management that Mr. Johnson was authorized to pick up any packages that were addressed to her, and that... I guess I'm not sure how that cuts. I mean, my judicial assistant is authorized to pick up packages to me also, but that doesn't  Well, that may be, but also Mr. Johnson indicated that he had the exclusive right to own, possess, and use the packages, and now... But that would be true, to get back to Judge Rawlinson's question, even if the package was intended for Ms. Lopez, that she had said, you can have anything in any package that comes whether it's for me or for you. Well, there's no indication that there was any mail ever sent to Ms. Lopez at the location directly or personal mail, or that Ms. Lopez was ever even at the location at any time. She was in New Jersey, all the rent checks were sent from New Jersey. It would appear that she was never at the location, so I can't give a specific answer to that question, but I think looking at the record and the way the record is laid out here, in this particular context, Mr. Johnson would have access to, and the right to, that parcel, and an interest in that parcel. But the apartment manager said that any packages would be given to Ms. Lopez if Ms. Lopez were present. Well, he did say that in the abstract, but there were no examples any time of packages being given to Ms. Lopez, that Ms. Lopez even existed in reality, or was anything more than an alias in this particular case, that Ms. Lopez ... Is there any evidence as to what you're saying right now, that she didn't exist and there was no Ms. Lopez? Well, there's no evidence one way or the other. We know that there's a name, Ms. Lopez, that was used. We know that ... Your client certainly didn't put in a declaration that said, this is my alter ego. There is no Ms. Lopez. I thought you just said she was in New Jersey. Well, the checks were sent from New Jersey, so there's no indication that she was ever, ever at the location at any time. No one saw her there. The building manager who submitted the declaration, Mr. Nisnick, never said that he observed her there, saw her there. Did he ever claim that that was his alias, that he was actually Ms. Lopez, and so that, as in the exceptions that have sometimes been found to the sender address e-rule? He did not, but I'm not saying that that's specifically the theory here, but the record is that there was no Ms. Lopez ever at the location, never signed any documents, was never seen there. Mr. Nisnick, who submitted the declaration that Judge Bennett asked about, never indicated I spoke with Ms. Lopez, I know who Ms. Lopez is, I've talked to her personally, just that he received an email from someone purporting to be Ms. Lopez. I would also point the court to the language in United States v. Broadhurst, where the court indicates that a formalized arrangement indicating joint control and supervision is sufficient to support a legitimate expectation of privacy, notwithstanding the use of a false name, which was used in that particular case. Broadhurst also cites U.S. v. Perez, which indicates that exercise of joint control and supervision of a vehicle can demonstrate a reasonable expectation of privacy. There are numerous cases that are cited in the briefs where packages that were addressed to other people and subject to someone else having access to the contents and actually  I thought it was a district court case. Were there appellate cases? I think you cited Sheldon, which was a district court case. Sheldon, Allen, Cruz are all district court cases. Yes, I understand they're all district court cases. But there's also no circuit court cases that indicate that standing is limited solely to the addressee and I think I'm getting low on time. Yes, two minutes and 33 seconds left. Would you like to save it for rebuttal? Yes. Thank you, counsel. We'll hear from the governor. Excuse me. Good morning. May it please the court. Ben Balding on behalf of the United States. This court should affirm the district court's denial of defendant's motion to suppress for several reasons. And I'll start by talking about the standing issue. And as your honors were talking, as an initial matter, whether or not a non-addressee or someone who's not the sender of a package could ever have standing is something that this court could find but need not find in this case. I think, as you've referenced, Judge O'Scanlan's concurrence was well reasoned. But even if, as defendant suggests, there are circumstances in which some sort of exception might apply, a specific parcel, someone might have a reasonable expectation of privacy in that parcel, even though he or she is not neither the sender nor the addressee. The defendant has failed to set forth facts that those circumstances were met here. Why is that? I mean, he says, I've got this apartment deal with Ms. Lopez, if she exists, I guess, that whenever I'm in town, I can use the package and any packages that come there are intended for me, and I have an expectation of privacy in them. And there's not really, other than the manager saying, well, if Ms. Lopez ever showed up, I'd give her the package. There really isn't very much evidence contradicting that. Well, there are two, excuse me, two responses, Your Honor. First, the district court made a specific finding of fact and rejected that as a conclusory and not credible in the absence of any declaration by Ms. Lopez. And whether or not, just briefly, the issue wasn't really raised. Any credibility finding without hearing any witnesses? Well, Your Honor, I think he had evidence before him. One was the declaration of Mr. Risnick saying that, you know, this is Ms. Lopez. She said that, you know, he can pick up packages for her as her assistant. And then he comes and says, you know, I exclusively have the right to pick up any package at any time. Even if you were to accept that, that he has this exclusive right, which the district court rejected, and we think that factual finding was not clearly erroneous. Even if you were to accept that, I think, Your Honors, hit on, there was no specific showing that those expectations or that defendant's expectation applied to this particular parcel. And I just want to make clear, there is nothing in the record that the defendant was here when this parcel was scheduled to arrive. It was scheduled to arrive no later than noon on January 5th. All he says in his declaration was that he arrived, he traveled to Los Angeles on January 5th and was expecting a package on January 6th. It is entirely within defendant's power to say what he wanted to say in his declaration to the extent he could. And he didn't say that. He could have said, or if it were true, he could have supposedly said that I was there, I was expecting this package to arrive on the 5th. There's nothing in the record that even if we were to accept this exclusive right to packages that arrived when he was there, there's nothing in the record that he was there by noon on January 5th. He was in Los Angeles at that point. Well, Your Honor, as I respectfully, he says he traveled on the 5th. He doesn't actually say he was at the apartment at noon on the 5th at the time the package was scheduled to arrive. He says he arrived in Los Angeles on January 5th. And are you saying that if you're not there the moment the package arrives, if he arrived 15 minutes later, then he wouldn't have a reasonable expectation of that package? Well, Your Honor, what I'm trying to suggest is that given the framework, which is that ordinarily a non-addressee has no expectation of privacy, he's trying to carve out this limited set of circumstances, and that is when I have exclusive use, and by his own argument that only applies when he is there in the city at the apartment because that's the trigger. Under his theory, the trigger is it's addressed to Ms. Lopez, but when I'm there I have the exclusive right. He has not met that limited set of facts. It's not met here because he hasn't set forth facts that he was actually there when this package was going to arrive, nor that this was a package he was expecting. He was expecting a package to arrive. He was expecting that package to arrive on January 6th. That's in his declaration, ER 35. There was a package, a UPS package, that arrived on January 6th, and it was not the subject parcel. That's in the record. That is in the record, Your Honor. That's in ER 35 at paragraph 15, Your Honor. So our position is that even if he could set up a set of circumstances in which he might be able to assert a Fourth Amendment right in a parcel not addressed to him, those circumstances were not met here. And for that reason, I think the First Circuit's recent opinion in the Stokes case, which is cited in the briefs, gives a framework that I think this Court could follow, which is essentially to state the general rule that ordinarily a non-addressee has no standing to assert this claim. And even if there were such a right, it's not met under the facts before this Court. So for all of those reasons, I think this Court could affirm the district court's denial of the motion to suppress based on the standing issue. I'd like to turn briefly to the issues of reasonable suspicion or probable cause in turn, which were not addressed in the opening argument. But in terms of the reasonable suspicion, I think there's a bit of a dispute as to whether or not it's the burden in terms of showing what time was the package supposed to be. Well, counsel, I'm more interested in the facts. I mean, basically the declaration was, I got a call from a reliable informant, and he described a package that's coming from New York to Los Angeles. And the government's position is that's enough to provide reasonable suspicion for basically sort of the Terry stop of the package. Well, a few things, Your Honor. It was the government's position is that there was more, a little bit more than that. There was more than that on which to base. And it was not just a suspicious package. It was an informant who had proven reliable on at least two prior occasions. But all the informant says is there's a package coming from New York to Los Angeles, and here's the tracking number. Yes, but then that package was found in Los Angeles. It met certain circumstances that the officers knew were consistent with trafficking. But it came from New York to Los Angeles. Well, it was sent from an area known for drug consumption, that's New York, to an area known for drug distribution. And it was sent by an overnight courier. Yes, Your Honor. But, again, the- Was every FedEx package from New York to Los Angeles, would law enforcement have a reasonable suspicion that it was part of the drug trade? Well, I think that's why it's important to look at the totality of the circumstances, Your Honor. And I think you're looking- it's tempting to look at each individual piece of evidence and think, well, that's very minor or nothing. Well, tell me what there is beyond what I said. Well, there's the law enforcement's- law enforcement is entitled- we should give a- we have to analyze it from the context of suspecting legal wrongdoing as understood by those versed in law enforcement. So to the law enforcement officer, the law enforcement officer who's trained, he has used an informant in the past or someone providing tips. Twice that has proven reliable. No indication that he's unreliable. They find the same package that's been sought and it's consistent. But the informant doesn't tell the officer this is a package that contains drugs. In fact, if you- even sort of looking at the affidavit in the light most favorable to you, it doesn't even say that the office- that the informant said the package was suspicious. It just says there's this package coming. Why does that show anything? I would add there is one additional, in terms of the reasonable suspicion analysis, and we cited it in our brief. It wasn't in the officer declarations, but it is in the record at ER 99. And it talks about an additional fact, which is it was sent from a UPS store, which is not- the sender address was not their own address. And that's an additional factor. Again, in the totality of the circumstances, looking at it all as the court must, it was enough to meet, which is the reasonable- excuse me, the reasonable suspicion standard, which is not a particularly high threshold to meet. Now- Do they need- does law enforcement need reasonable suspicion to have a dog sniff if it doesn't delay the package and delay it in this case? So the answer to that question is Jefferson clearly holds that if the dog sniff happens prior to the guaranteed delivery time of the package, regardless of whether the delivery can be completed on its scheduled time, if the dog sniff occurs before that time, there is no Fourth Amendment issue. And I'll just read a quote from Jefferson. It says- Is there evidence that it happened before the delivery time in this case? So that's where there's a bit of a conflict in evidence, Your Honor, and- or a lack of evidence. There was a stipulation, and for some reason UPS could only confirm that the package was guaranteed either by 1030 a.m. or by noon. There was no further information. The party stipulated that that was the guaranteed delivery time. The government did introduce evidence that the dog sniff occurred in the morning of that day, not specifically before or after 1030. So that's where the gap is. So if it's the defendant's burden to establish the facts suggesting a Fourth Amendment violation, which we think it is because it's wrapped up in the concept of standing, then the record shows that the dog sniff occurred before the latest guaranteed delivery time, which is 12. On the other hand, if it's the government's burden and 1030 is the guaranteed delivery time, at most you've got a minor up to 90-minute delay between the time of guaranteed delivery and the time of the dog sniff. If that is the case, Your Honors, I would submit the government had reasonable suspicion to justify that brief detention to subject it to a dog sniff, which is what the court found below. With respect, excuse me, I just wanted to cite to Jefferson on that one point, and it says at page 934, we hold that an addressee has no Fourth Amendment possessory interest in a package that has a guaranteed delivery time until such delivery time has passed. Before the guaranteed delivery time, law enforcement may detain such a package for inspection purposes without any Fourth Amendment curtailment. Can you address the errors that opposing counsel says occurred in the search, in the affidavit for the search warrant, and therefore the search warrant was invalid? Yes, Your Honor. And again, we think the search warrant, many of the cases cited with respect to the need for dog qualifications, they apply in the context of a probable cause hearing that was based on a search that occurred without a search warrant. In other words, the frequent example is an officer walks and has a dog sniff a vehicle and decides to arrest based on the results of the dog sniff. That's not what happened here. What happened was they submitted, they sought a warrant, they obtained a warrant, which is what law enforcement are supposed to do, and that's the way we want to encourage that. I think the cases show. So what defendant looks at is, again, tries to take piecemeal attacks at the pieces of the warrant. But we have to look at the totality of the circumstances as to what was in front of the magistrate. Now, there was information about information being provided about this specific package. It wasn't the detail that was available, and the government concedes there certainly could have been more facts added to this affidavit. And, in fact, had the dog's qualifications been added, there wouldn't really be a debate about whether or not the warrant was valid because I think the case law shows that that alone can establish probable cause. Here there were no qualifications, but there was enough. So first with the tip, the officer referenced specific information and then says that they seized the package. So at the very least, there's enough in the affidavit to show that the tip was specific enough to identify a specific parcel. And then you've got the information that Judge Bennett did not give too much weight to, but at least there were some factors, the destination, the place of shipping being consistent, also the officer's training and experience as a narcotics officer, and finally his shipping UPS overnight. And then add to that the reference to the drug detection dogs and the sniff. Now, again, without the dog's qualifications, you don't strike the entirety of the fact of a dog sniff. You can still look at it through the common sense and totality of the circumstances approach. But you have a back-up argument that even if the warrant shouldn't have been issued, that the officers were entitled to rely on it in good faith. Absolutely, Your Honor. I think that's the whole point here. Even if the defendant could establish all these other arguments, the good faith exception, we think, would unquestionably apply here. The warrant is not so, first of all, we do not believe it was obtained by way of unlawful evidence. It's not a case where they tried to submit false evidence to obtain the warrant. So those exceptions, we think, do not apply. What they did was they failed to include better evidence that would have made it even a more robust and more valid warrant. So this is not the type of conduct we're trying to deter in the sense of police trying to do an end-around on the magistrate. They submitted it to a magistrate, and they were entitled to rely on good faith, even though it was lacking the dog credibility. Was there evidence in the record that Page was actually credentialed, even though it wasn't in the affidavit? Your Honor, the actual qualifications were never submitted. And they were produced, but defense did not submit them. We did not submit them because they were not attached to the warrant, and so for that reason. But in terms of good faith, there is evidence in the record from the declaration of Detective Frank, and I would direct the Court to ER 148, paragraph 8, as well as ER 150, paragraph 4. And that's both officers were familiar with Page and her certifications and her training. So at least in terms of good faith, they were relying on what they believed was a valid warrant. And not only that, both a state judge and now a federal district judge have both confirmed that that warrant was sufficient. So even if this Court were to disagree with those findings, the mere fact that there's this disagreement among educated legal individuals should warrant the good faith exception as to the officers reading that warrant on its face. All right, thank you, counsel. You've exceeded your time. Your motto? Thank you. And there's just a few points I'd like to address. The first one would be with regard to Judge O'Scanlan's analysis and the concurrence in Lozano, I would just indicate that Judge O'Scanlan talked about the assertion of dominion. He proposes the rule for the premise that the assertion of dominion is made for wrongful reasons in some of these male cases. And in this case, there's no evidence of any alias in the present case. And also, the privacy rights of an individual and a reasonable expectation of privacy must be determined before the search occurs without reference to the incriminating or innocent nature of the subsequently discovered fruits of the search. So I think that that's basic Fourth Amendment principle. And I think that adopting a bright line rule would be, first of all, in violation of racis. And I think that the facts in this case are, if you look at the facts that were undisputed and found by the court, Mr. Johnson clearly did have a reasonable expectation of privacy. With regard to reasonable suspicion, I would just indicate that essentially the reasonable suspicion was sort of farcical. I think as one of your honors pointed out, it's basically any package going from New York to L.A. or vice versa. And there's nothing that would distinguish this, nothing that the informant said that would distinguish it. With regard to timing, the government had the opportunity. They submitted these declarations that could have indicated the time of the search. If it was before 10.30, that would be one thing. If it was after 10.30, that would be a different thing. There's just no way of knowing what time the – or not the search, but the dog sniff took place. With regard to the search warrant, the warrant was incredibly thin. There was nothing with regard to the dog, nothing about his certifications, nothing about his training, nothing about false alerts. This could have been any dog, somebody standing there with a treat where the dog would alert. Both of the officers who said they knew the dog knew nothing about it. And with regard to good faith, I would just indicate that this is a situation where they relied on the dog sniff, which was unlawful. And secondly, any reasonably trained officer, we believe, would have known that there was no basis for a probable cause finding based on the information that was contained in the affidavit to the warrant. Thank you, counsel. Thank you to both counsel. The case just argued and submitted for decision by the court. That completes our calendar for the morning. We are on recess until 9.30 a.m. tomorrow morning. All rise. Court for this session stands adjourned.
judges: Rawlinson, Ikuta, Bennett